UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

═══════════════════════════════════

SCHLATHER, STUMBAR, PARKS &
SALK, LLP, et al.,

                                        Plaintiffs,

        -v.-                                    5:10-cv-0167
                                                (NPM/DEP)
ONE BEACON INSURANCE COMPANY,

                                        Defendant.

═══════════════════════════════════

APPEARANCES

WOLFORD LAW FIRM, LLP              MICHAEL R. WOLFORD, ESQ.
*Attorneys for Plaintiffs*
16 East Main Street
600 Reynolds Arcade Building
Rochester, New York 14614

STEINBERG & CAVALIERE, LLP         KEVIN F. CAVALIERE, ESQ.
*Attorneys for Defendant*          ROBERT P. PAGANO, ESQ.
50 Main Street, Suite 901
White Plains, New York 10606

Neal P. McCurn, Senior District Judge

## *Memorandum, Decision, and Order*

## *I.  Introduction*

        Presently before the court in this diversity action is defendant's motion for

summary judgment, and plaintiffs' cross-motion for summary judgment pursuant

to Rule 56 of the Federal Rules of Civil Procedure.  Each party has opposed the respective motions.  Decision on the pending motions is based entirely on the submitted papers, without oral argument.  For the reasons that follow, defendant's motion is granted in part and denied in part and plaintiffs' cross-motion is granted in part and denied in part.

## II.  Procedural Background

Plaintiffs commenced this action in New York State Supreme Court, Tompkins County on January 13, 2010, which was removed to this court on February 11, 2011.  In their original complaint, Schlather, Stumbar, Parks & Salk, LLP ("the Firm"[1]), *et al.* (collectively "Plaintiffs"), set forth three causes of action against One Beacon Insurance Company ("Defendant" or "One Beacon") for (1) declaratory relief, (2) breach of contract, and (3) "breach of covenant of good faith and fair dealing" stemming from Plaintiffs' claimed coverage under a professional liability insurance policy executed between the parties, which Defendant denied.  After removal to this court, Defendant filed a motion to dismiss the third cause of action pursuant to Rules 8(a)(2), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiffs thereafter amended their complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, expanding the allegations in support of the third cause of action.  This Court granted Defendant's motion and dismissed the third cause of action as set forth in the amended complaint.  See Schlather, Stumbar, Parks & Salk, LLP v. One Beacon Ins. Co., No. 5:10-cv-0167, 2011 WL 222235, at *1 (N.D.N.Y. Jan. 21, 2011).

In moving for summary judgment, Defendant argues that the insurance

---

[1]  All references to the Firm will include its successor and predecessor entities who are parties to this action.

2

policy's known claims exclusion bars coverage of a certain malpractice action against Plaintiffs.  Defendant also notes that it disclaimed coverage because that action arose from a claim that had been made before the insurance policy came into effect.

In support of their cross-motion for summary judgment, Plaintiffs argue that (1) Defendant improperly disclaimed coverage; (2) Defendant had a duty to provide a defense; and (3) Defendant breached the parties' contract by failing to defend and indemnify Plaintiffs.

### *III.  Factual Background*

The following facts are not in dispute.

The Firm had professional liability insurance with Zurich Insurance Company ("Zurich"), which expired on September 30, 2008.  Prior to the expiration, an insurance broker contacted David M. Parks ("Parks"), then the Firm's managing partner, and provided Parks with an application for professional liability insurance through One Beacon.  Two of the questions appearing on the application were "(a) Has any professional liability claim or suit been made against you, your firm or any other member of your firm in the past five (5) years?" and "(b) Are you or any members or employees aware of any fact, circumstance or situation which may give rise to a claim?"  Ex. A. to Aff. of Sarah R. Schmitz, Feb. 11, 2011 ("Schmitz Aff."), at 3, Dkt. No. 23-48.  Parks checked the boxes labeled "No" in response to those questions.  Id.  Parks signed and dated the application on September 10, 2008.  Id.  Thereafter, One Beacon issued an insurance policy to the Firm, which coverage was to start at 12:01 A.M. on October 1, 2008, and end at 12:01 A.M. on October 1, 2009.

Diane L. Campbell ("Campbell") began working for the Firm in February

2000, and became a partner in January 2005.  She continued as partner in the Firm
and its successor entities until April 6, 2007.  In the spring of 2002, Campbell
began representing Sandra Stoel ("Stoel") in a worker's compensation case arising
from the death of Stoel's husband in a work-related accident that occurred in
February 2002.  In or about January 2004, Stoel told Campbell that she was
interested in filing a wrongful death action against her deceased husband's
employer, Leprino Foods, Inc.  That action was filed in New York State Supreme
Court, Tioga County on February 13, 2004 ("Leprino Action").  The Leprino
Action was then removed to the United States District Court for the Northern
District of New York on or about September 22, 2004, and was dismissed on
August 22, 2006.

On May 24, 2007, Stoel learned from a paralegal at the Firm that the
Leprino Action had been dismissed.  Stoel met with Raymond M. Schlather
("Schlather"), another partner at the Firm, on June 28, 2007, to discuss the Leprino
Action.  At this meeting, Stoel gave Schlather three typewritten pages of notes that
were critical of Campbell's performance, and the notes asked a number of
questions regarding the Firm's work on the case.

After this meeting, Schlather intended to review the case file and to send
Stoel a letter to explain what had happened.  Schlather sent a later, dated July 31,
2007, explaining that the wrongful death action was dismissed because "Campbell
determined that [it] did not have merit and elected not to prosecute it further."  Ex.
A to Aff. of Raymond M. Schlather, Feb. 24, 2011, Dkt. No. 27-7  ("Schlather
Aff.").  Schlather also described a February 26, 2006, meeting where Campbell
advised Stoel that the case "did not have merit and requested [Stoel's] assent to
discontinue the action," but Stoel responded that she "wanted to think about what

4

[Campbell] had said," and that she would later follow-up.  Id.  Schlather also noted that the Firm's records "indicate that as of March 8, 2005, . . . Campbell had not heard back from [Stoel] and advised opposing counsel -- who then advised the court -- accordingly."  Id.  Schlather also apologized for the Firm's failure to notify Stoel of the dismissal.  Id.  Stoel responded to this letter on August 7, 2007, stating, among other things, that she did not consent to the dismissal of the Leprino Action.  See Ex. B to Schlather Aff., Dkt. No. 27-9 ("Stoel Letter").[2]

On December 5, 2008, Patrick J. Higgins ("Higgins") of Powers & Santola, LLP ("Powers & Santola"), in a letter addressed to Schlather, "demand[ed] . . . all damages, loss and harm arising from legal practice in" the Firm's handling of the Leprino Action.  Ex. D. to Schlather Aff. ("Higgins Letter").  By his letter, Higgins also instructed Schlather to "notify the legal malpractice carriers for [the Firm], its partners, and all predecessor firms and partners" that Powers & Santola was making a demand on those policies.  Id.  Five days later, Schlather wrote a letter to Zurich and One Beacon requesting that they represent the Firm.  See Ex. C to Schmitz Aff. at 2-3, Dkt. No. 23-50.

A malpractice action on behalf of Stoel and against the Firm, Schlather, and Campbell was commenced on or about January 5, 2009 ("Stoel Malpractice Action").  The next day, Schlather sent a fax to One Beacon's Chief Claims Officer to repeat his request that One Beacon "enter and defend" the Firm in the Stoel Malpractice Action.  Ex. C to Schmitz Aff. at 1.  Included in the fax were two letters between the Firm and Stoel; Schlather's initial letter to One Beacon seeking representation; and the Higgins Letter.

On February 25, 2009, One Beacon Claims Attorney Sarah R. Schmitz

---

[2] The contents of this letter will be discussed more fully below.  See Point IV(C) *supra*.

("Schmitz") notified Schlather that One Beacon had "agreed to provide a defense to" the named defendants in the Stoel Malpractice Action, "subject to a reservation of rights."  Ex. F. to Schlather Aff. at 1, Dkt. No. 27-13.  Approximately six months later, on September 9, 2009, Schmitz sent a letter to Schlather notifying him that One Beacon "will no longer provide for [the Firm's] defense and will not provide indemnity coverage" in the Stoel Malpractice Action because the Policy did not cover the claims arising from that action.  Ex. J to Schmitz Aff. at 1, Dkt. No. 23-57 ("Disclaimer Letter").

In the Disclaimer Letter, Schmitz stated that the "claim was first made in August 2007 at a time when no policy was yet in force."  Id.  Schmitz further stated that Campbell "made a conscious decision to allow the dismissal" of the wrongful death action, and that the Firm was aware in the summer of 2007 that Stoel was angry about the dismissal.  Id. at 2.  Schmitz specifically cited to the following portions of the Policy:

> **We** agree to pay on **your** behalf all **damages** in excess of the deductible amount and up to the limits of liability stated in the Declarations provided such **damages**: A. result from **claims**: 1) first made against **you** during the **policy period**[.][3]
> . . . .
> This **policy** does not apply to: A. any claim arising out of a **wrongful act** occurring prior to the **policy period** if, prior to the effective date of [the Policy]: . . . 2. **you** had a reasonable basis to believe that you had committed a **wrongful act** or engaged in professional misconduct; [or] 3. **you** could foresee that a claim would be made against

---

[3] Going forward this provision will be referred to as the "Insuring Clause."

you[.][4]

Ex. J to Schmitz Aff. at 1-2 (emboldened in original).  See also Ex. B to Schmitz

Aff. at 11, 20.

### IV.  Discussion

#### A.  Legal Standards Governing Motions for Summary Judgment

A motion for summary judgment shall be granted "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  FED. R. CIV. P. 56(a).  The movant has the initial

burden to show why it is entitled to summary judgment.  See Salahuddin v. Goord,

467 F.3d 263, 272 (2d Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317,

323, 106 S. Ct. 2548 (1986)).  If the movant meets its burden, the burden shifts to

the non-movant to identify evidence in the record that creates a genuine issue of

material fact.  See id. at 273 (citing Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986)).  A party's factual assertions

must be supported by

> (A) citing to particular parts of materials in the record,
> including depositions, documents, electronically stored
> information, affidavits or declarations, stipulations
> (including those made for purposes of the motion only),
> admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the
> absence or presence of a genuine dispute, or that an
> adverse party cannot produce admissible evidence to
> support the fact.

FED. R. CIV. P. 56(c)(1).

When deciding whether a material issue of fact is in dispute, the court is

---

[4] Going forward this provision will be referred to as the "Known Claims Exclusion."

cognizant that "[a] fact is material when it might affect the outcome of the suit under governing law." Tracy v. Freshwater, 623 F.3d 90, 95 (2d Cir. 2010) (internal citation omitted).  Also, a material fact is genuinely in dispute "if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Bessemer Trust Co., N.A. v. Branin, 618 F.3d 76, 85 (2d Cir. 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)).

"In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible or usable at trial." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008) (internal quotation and citation omitted).  When deciding a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor. Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598 (1970)).  However, a properly supported summary judgment motion "will not be defeated merely upon a 'metaphysical doubt' concerning the facts . . . or on the basis of conjecture or surmise." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., 475 U.S. at 586)).

### B.  Legal Standards Governing The Interpretation of Insurance Contracts

"'Because state law supplies the rules in diversity-of-citizenship cases,' New York law applies in this case." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (quoting Rosenfeld v. Basquiat, 78 F.3d 84, 88 (2d Cir. 1996)). Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." Vill. of Sylvan Beach v. Travelers Indem. Co., 55 F.3d 114, 115 (2d Cir. 1995).  "The

initial interpretation of a contract 'is a matter of law for the court to decide.'" K. Bell & Assocs. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996) (quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 299 (2d Cir. 1996)).  "Part of this threshold interpretation is the question of whether the terms of the insurance contract are ambiguous."  Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, 136 F.3d 82, 86 (2d Cir. 1998).  An ambiguity exists where the terms of an insurance contract could suggest "more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."  Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906 (2d Cir. 1997) (citation and internal quotation marks omitted).  Once a court concludes that an insurance provision is ambiguous, "the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract."  Alexander & Alexander, 136 F.3d at 86.  "If the extrinsic evidence does not yield a conclusive answer as to the parties' intent," a court may apply other rules of contract construction, including the contra-insurer rule, which generally provides that where an insurer drafts a policy "any ambiguity in [the] . . . policy should be resolved in favor of the insured."  McCostis v. Home Ins. Co., 31 F.3d 110, 113 (2d Cir. 1994).

### *C.  Duties Arising From Insurance Contracts, Generally*

In New York, "it is axiomatic that an insurance company's duty to defend is broader than its duty to indemnify."  Hanover Ins. Co. v. Cowan, 172 A.D.2d 490, 491, 568 N.Y.S.2d 115 (App. Div. 1991).  "[A] separate, contractual duty to defend exists, and [endures] until it is determined *with certainty* that the policy

does not provide coverage." Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 620 (2d Cir. 2001) (emphasis in original).  Therefore, these two duties will be analyzed separately.

### 1.  The Duty to Indemnify

"It is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss." Morgan Stanley Group Inc. v. New England Ins. Co., 225 F.3d 270, 276 (2d Cir. 2000) (citations omitted).  "The burden then shifts to the insurer to establish that an exclusion applies." Bianchi v. Lorists' Mut. Ins. Co., 422 F. App'x 56, 58 (2d Cir. 2011) (citing Critchlow v. First UNUM Life Ins. Co. of Am., 378 F.3d 246, 256-57 (2d Cir. 2004)).

### a.  The Insuring Clause

The Policy states in pertinent part that One Beacon "agree[s] to pay on [the Firm's] behalf all **damages** in excess of the deductible amount and up to the limits of liability stated in the Declarations provided such **damages** . . . result from claims . . . first made against [One Beacon] during the **policy period** . . . and . . . are caused by a **wrongful act** which takes place before or during the **policy period** and after the retroactive date shown on the Declarations."  Ex. B to Schmitz Aff. at 11 (emphasis in original).  Thus, it is necessary to determine whether a "claim" was made before the policy period came into effect.

As a threshold matter, "[c]ourts have found that the term 'claim' as used in liability insurance policies is unambiguous and generally means a demand by a third party against the insured for money damages or other relief owed." Home Ins. Co. of Ill. v. Spectrum Info. Tech., Inc., 930 F. Supp. 825, 846 (E.D.N.Y. 1996).  A "claim" need not be a formal lawsuit, but "an accusation that

wrongdoing occurred is not by itself a claim . . . ; nor is a naked threat of a future lawsuit . . . ; or a request for information or an explanation . . . .   A claim requires, in short, a specific demand for relief."  <u>Windham Solid Waste Mgmt. Dist. v. Nat'l Cas. Co.</u>, 146 F.3d 131, 134 (2d Cir. 1998) (citations omitted).  Consistent with the case law, the Policy defines "claim" as "a demand received by you for money, including the service of a lawsuit or institution of arbitration proceedings or filing of any other claim against you, alleging a wrongful act as defined in this policy." Ex. B to Schmitz Aff. at 13.

It appears that Plaintiffs contend that the claim was first made in the Higgins Letter, which is dated December 5, 2008.  <u>See</u> Pls.' Mem. of Law in Opp'n at 4, Dkt. No. 29.  However, Schmitz stated that this letter "may not technically be a claim either" because it demanded an unspecified monetary amount.  Dep. of Sara Schmitz, Oct. 15. 2010, at 63 ("Schmitz Dep."), Ex. C to Aff. of Michael R. Wolford, Feb. 28, 2011, Dkt. No. 27-6.  It is indisputable that the complaint commencing the Stoel Malpractice Action, dated December 30, 2008, constitutes a claim as contemplated by the Policy, and that this claim was made two months after the Policy came into effect in October 2008. Plaintiffs, however, do not appear to argue that Stoel first made her claim with the filing of that complaint.

Defendant asserts that the claim was first made in the Stoel Letter, which Schlather received thirteen months before the Policy's effective date of October 1, 2008.  Plaintiffs argue that the Stoel Letter did not constitute a "claim" under the Policy.  In the letter, Stoel expressed her disappointment with the Firm's and Campbell's handling of the Leprino Action, specifically alleging several deficiencies in performance, including the failure to respond to inquiries and

11

phone calls, and other unprofessional conduct.  See Ex. B to Schlather Aff. at 1-3.

Stoel requested that Schlather provide her with Campbell's "notes" stating

Campbell's "reasons for dropping the lawsuit" or "something that outlines her

actions" in the Leprino Action, and that the "file NOT be closed[] until this matter

is resolved.".  Id. at 4 (capitalization in original).  Finally, Stoel concluded with:

"My prayer is that your integrity will allow you to respond in a way that will not

reflect poorly on your law firm or your name . . . ."  Id.

The Stoel Letter did not constitute a "claim" as contemplated by the case

law or the Policy.  Under the case law, a request for information is insufficient to

constitute a "claim."  Moreover, while Stoel requests some sort of response from

Schlather and the Firm, the unspecified relief requested does not amount to a

"claim" as contemplated by the Policy, which defines "claim" as "a demand . . . for

money," or the filing of a lawsuit or other proceeding.  Ex. B to Schmitz Aff. at

13.  Notably, Schmitz, who served as One Beacon's Claims Attorney, did not

consider the Stoel Letter to be a claim either.  See Schmitz Dep. at 60.

Defendant's attempt at analogizing this case to Seneca Insurance Co. v.

Kemper Insurance Co., No. 02 Civ. 10088, 2004 WL 1145830, at *1 (S.D.N.Y.

May 21, 2004), is unavailing.  The letter at issue there was drafted and signed by

counsel to an aggrieved individual, and submitted to the organization that

allegedly aggrieved the individual.  Id.  That letter included an allegation of the

violation of federal and state laws, and a claim that the individual suffered

"sustained actual direct damages" as a result of the organization's actions  Id. at

*5.  Significantly, the court there found that it was implied that the purpose of a

meeting that counsel requested in the letter was to "demand monetary damages or

other relief."  Id.  Here, the Stoel Letter was drafted by Stoel herself and not by her

attorney.  Moreover, although Stoel alleged wrongdoing and requested that the Firm provide additional information, her letter contains neither an explicit or implicit demand for monetary relief nor a request for a meeting to discuss monetary or other relief.

Accordingly, issues of fact remain as to when Stoel first made her claim. Assuming for the sake of argument that Stoel first made her claim after the Policy's effective date, the Known Claims Exclusion could relieve One Beacon of its obligations under the Policy.  Accordingly, an analysis of that portion of the Policy is warranted.

### b.  The Known Claims Exclusion

Defendant, as the insurer, bears the burden of establishing that a policy exclusion applies.  See Bianchi, 422 F. App'x at 58 (citing Critchlow, 378 F.3d at 256-57).  Defendant argues that it does not have an obligation to defend or indemnify Plaintiffs "because, prior to the inception of their coverage with One Beacon, a reasonable basis existed to believe a wrongful act was committed or professional misconduct was engaged in, or a claim could be foreseen, arising out of their legal representation of" Stoel in the Leprino Action.  Def.'s Mem. of Law at 2.

The Known Claims Exclusion states in pertinent part:

> This policy does not apply to . . . any claim arising out of a wrongful act occurring prior to the policy period if, prior to the effective date of [the Policy]: . . . you had a reasonable basis to believe that you had committed a wrongful act or engaged in professional misconduct; [or] . . . you could foresee that a claim would be made against you[.]

Ex. B to Schmitz Aff. at 20.  "Wrongful act" is defined as "any actual or alleged

13

act, error, omission or breach of duty arising out of the rendering or the failure to render professional legal services" or "personal injury arising out of your conduct relating to the delivery of professional legal services." Id. at 16.  "You," *inter alia*, is defined as "1. the named insured and any predecessor of such entity; [and] 2. any lawyer who is or becomes a past or present partner, officer, director, stockholder, shareholder or employee of the named insured, but only while performing professional legal services on behalf of it . . . ." Id.  Although the Policy does not define the term "arising out of," in the context of insurance exclusions, New York law defines that term as "originating from, incident to, or having connection with." Maroney v. N.Y. Cent. Mut. Fire Ins. Co., 5 N.Y.3d 467, 472 (2005) (citations omitted).  Moreover, this term "should be interpreted as narrowly as possible in an insurance exclusion, because any ambiguities in insurance contracts should be resolved in favor of the insured." Gluck v. Executive Risk Indem., Inc., 680 F. Supp. 2d 406, 419 (E.D.N.Y. 2010).

　　New York courts apply a two-pronged test to determine the applicability of known claims exclusions.  Liberty Ins. Underwriters, Inc. v. Corpina Piergrossi Overzat & Klar LLP, 78 A.D.3d 602, 604, 913 N.Y.S.2d 31, 33 (App. Div. 2010).  First, the court "must . . . consider the subjective knowledge of the insured [.]"  Id.  Second, the court must then consider "the objective understanding of a reasonable attorney with that knowledge."  Id. (internal quotation marks and citations omitted).  The "first prong requires the insurer to show the insured's knowledge of the relevant facts prior to the policy's effective date, and the second requires the insurer to show that a reasonable attorney might expect such facts to be the basis of a claim."  Id. at 604-05 (internal quotation marks and citations omitted).

　　Initially, before proceeding with the analysis under the two prong test, two

14

threshold findings are identified.  First, the pertinent language in the Policy is unambiguous.  In fact, the parties do not dispute the meaning of the Known Claims Exclusion.  Rather, the issue is whether it applies.  Second, Plaintiffs' argue that Campbell's knowledge of the events surrounding the Leprino Action, including Stoel's displeasure with Campbell's work, would need to be imputed to Parks because Parks completed the insurance application.  This argument is unfounded.  Schlather was a partner at the firm during the relevant times in this dispute, and he continues to serve in that capacity.  Thus, Schlather is included in the definition of "you" under the Policy and its Known Claims Exclusion.  Moreover, although the insurance application does not define "you," the question asks in full: "Are you or any members or employees aware of any fact, circumstance or situation which may give rise to a claim?"  Ex. A. to Schmitz Aff., at 3.  Schlather was undoubtedly a member and an employee of the Firm at the time that Parks completed the application.  As such, the Known Claims Exclusion would apply if Schlather knew of the relevant facts regarding the Firm's representation of Stoel prior to the Policy's effective date, and if a reasonable attorney with Schlather's knowledge might expect those facts to be a basis for a claim.[5]  Additionally, the Policy defines "you" as "any lawyer who is or becomes a *past* or present partner . . . or employee of the named insured . . . ."  Ex. B to Schmitz Aff. at 16 (emphasis added).  Thus, Campbell would also be included in the definition of "you" even though she was no longer employed by the Firm by

---

[5]  Plaintiffs argue that the Disclaimer Letter "does not suggest that Schlather or [the Firm] had a reasonable basis to believe [the] alleged conduct constituted a wrongful act."  Pls.' Mem. of Law In Support at 19.  In the Disclaimer Letter, however, Schmitz states that Schlather "personally became aware (and, therefore, the insured firm became aware) of the problem as well as [Stoel's] anger about the dismissal in the summer of 2007 — all prior to the October 1, 2008 inception of the insured's first policy."  Ex. J to Schmitz Aff.  at 2.

the time that the Policy came into effect.  Therefore, imputing either Campbell's or Schlather's knowledge of the relevant facts is unnecessary.

All of the following occurred before Parks signed the insurance application on September 10, 2008, and before the Policy came into effect on October 1, 2008. Schlather met with Stoel and her personal advisors in April 2002 to discuss a potential lawsuit against Leprino.  See Schlather Aff. ¶ 6.  Thereafter, Schlather received periodic updates from Campbell regarding the Leprino Action after it was filed in February 2004.  Id. ¶ 7.  Schlather met with Stoel on June 28, 2007, to discuss the August 2006 dismissal of the Leprino Action.  Id. ¶¶ 9, 11.  After reviewing the Firm's records on the Leprino Action, Schlather wrote a letter, dated July 31, 2007, to Stoel that explained the events leading up to the dismissal.  Id. ¶ 11.  In this letter, Schlather states that Campbell met with Stoel on February 26, 2006.  See Ex. A to Schlather Aff. at 1.  Schlather also states that Campbell advised Stoel that the case had no merit, and Campbell "requested [Stoel's] assent to discontinue the action."  Id.  He further states that Stoel told Campbell that she "wanted to think about" it and that she "would get back to her."  Id.  Additionally, he states that "as of March 8, 2005, . . . Campbell had not heard back from [Stoel] and advised opposing counsel – who then advised the court – accordingly."  Id. Finally, Schlather apologized on behalf of the Firm and Campbell for failing to inform Stoel that the case had been dismissed.  Id. at 1-2.

In response, on August 7, 2007, over a year before the Policy came into effect, Stoel wrote to Schlather stating that she did not consent to the dismissal of the Leprino Action.  See Schlather Aff. ¶ 12; Ex. B to Schlather Aff.[6]  In this

---

[6]  The veracity of the allegations contained in the Stoel Letter is irrelevant to the Court's analysis of the pending motions.  This letter is relevant only to the extent that it undoubtedly put

letter, Stoel also accused Schlather of having "no real knowledge of what happened with" the Leprino Action.  Ex. B to Schlather Aff. at 1.  Additionally, Stoel alleged deficiencies in Campbell's handling of the Leprino Action, including the failure to return phone calls or provide requested documents.  Id. at 1-2.  This letter also recounted a February 2006 meeting between Stoel and Campbell where Stoel claims that she "left [Campbell's] office with the assurance that [Campbell] would be sending . . . information that would help [Stoel] in making a decision about the case."  Id. at 1.  Stoel was "expecting a list of reasons, in written form, as to why [Campbell] felt that the case could not be won," and Campbell allegedly told Stoel that she should expect the letter "by the middle of the following week." Id.  Weeks later, Campbell called Stoel to say that the case should be withdrawn because it was "not winnable," but that the decision to withdraw the case was for Stoel to make.  Id. at 1-2.  As already discussed above, Schlather admits that no one at the Firm ever received notice from Stoel that she wanted to withdraw the case.

Based on the admissions contained in Schlather's affidavit and other record evidence that Plaintiffs submitted, it is indisputable that Schlather knew of the relevant facts regarding the Firm's representation of Stoel in the Leprino Action – including Stoel's displeasure of the Firm's handling of that action – before the Insurance Application was signed and prior to the Policy's effective date.  As such, the first prong of the two-part test, which analyzes Schlather's subjective knowledge of the facts, is satisfied.

The second prong of the analysis – the objective prong – is whether a reasonable attorney with Schlather's knowledge of the relevant facts might expect

---

Schlather on notice that Stoel was unhappy with the Firm's handling of the Leprino Action.

those facts to be a basis for a claim.  Both the New York Rules of Professional Conduct, which became effective on April 1, 2009, and the New York Lawyer's Code of Professional Responsibility, which was in effect when Defendant began its coverage on October 1, 2008, set forth the minimum level of professional conduct that is expected of all New York attorneys.  N.Y. RULES OF PROF'L CONDUCT pmbl. ¶ 6 ("The Rules of Professional Conduct are rules of reason. . . . The Rules state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action."); N.Y. LAWYER'S CODE OF PROF'L CONDUCT 5 (The Code "define[s] the type of ethical conduct that the public has a right to expect not only of lawyers but also of their non-professional employees and associates in all matters pertaining to professional employment.").  Thus, these rules provide guidance on what is expected of a reasonable attorney.[7]  Under both sets of rules, an attorney must keep a client informed about his case and promptly comply with the client's requests for information.  N.Y. RULES OF PROF'L CONDUCT R. 1.4(a); N.Y. LAWYER'S CODE OF PROF'L CONDUCT EC 9-2.  The Stoel Letter put Schlather on notice that Stoel believed that Campbell was unprofessional for failing to return phone calls or provide requested documents. Additionally, under both sets of rules, the decision to settle, or otherwise dispose of a case, must be made by the client.  N.Y. RULES OF PROF'L CONDUCT R. 1.2(a); N.Y. LAWYER'S CODE OF PROF'L CONDUCT EC 7-7.  The Stoel Letter put Schlather on notice that neither Campbell nor anyone else at the Firm had Stoel's

---

[7]  These rules are relevant because they set forth the minimum standards that are expected of all attorneys who practice in New York State.  However, the objective prong may still be satisfied even if an attorney complies with the rules.  See Liberty Ins. Underwriters, Inc., 78 A.D.3d at 607 ("[I]f a reasonable attorney with the subjective knowledge of the insured would expect a claim against the insured on the basis of the facts known to the insured, coverage would be excluded regardless of any belief that no professional standards were violated.").

consent to withdraw the Leprino Action.

Significantly, in her letter, Stoel also stated "Concerning my client rights, I feel violated."  Stoel was "entitled to have [her] questions and concerns addressed in a prompt manner and to have [her] telephone calls returned promptly[;] to be kept informed as to the status of [his or her] matter and to request and receive copies of papers . . . ."  N.Y. COMP. CODES R. & REGS. tit. 22, § 1210.1(5)-(6).[8] Stoel was also "entitled to have [her] legitimate objectives respected by [her] attorney, including whether or not to settle [her] matter . . . ."  Id.  § 1210.1(7).

Therefore, a reasonable attorney with knowledge of the foregoing might expect a claim to arise because the Firm's alleged conduct falls below the minimum level of professional conduct expected of attorneys, and Stoel had alleged a violation of her rights as a client.[9]  Thus, the second prong of the two-part test is also satisfied.[10]

As such, the Known Claims Exclusion applies and the Policy does not cover

_____

[8]  This regulation requires every attorney with an office in New York State to post a "Statement of Client's Rights," which contains, among other things, the portions quoted herein.

[9]  Again, this court makes no judgment on the merits of allegations contained in the Stoel Letter, including whether the Firm violated Stoel's rights as a client.  In analyzing the pending motions, the only concern is whether Schlather, and thus the Firm, knew that Stoel was unhappy with the Firm's performance, and whether a reasonable attorney with such knowledge, including the reasons for Stoel's displeasure, might expect a claim to arise.

[10]  Plaintiffs appear to argue that even if the Known Claims Exclusion applied, it would apply only as to any duty owed by Campbell to Stoel and only to the allegations against Campbell.  Yet, as stated above, the Policy, among other things, defines "you" as "the named insured and any predecessor of such entity" or "any lawyer who is or becomes a past or present partner, officer, director, stockholder, shareholder or employee of the named insured."  Ex. B to Schmitz Aff. at 16.  Additionally, New York law defines "arising out of" as "originating from, incident to, or having connection with."  Maroney, 5 N.Y.3d at 472 (citations omitted).  Thus, the Known Claims Exclusion applies to all of the Plaintiffs because the Stoel Malpractice Action originates from Campbell's representation of Stoel, and Stoel's displeasure with that relationship.

the claims raised in the Stoel Malpractice Action.  Accordingly, Defendant's motion for summary judgment is granted and Plaintiffs' cross-motion for summary judgment is denied as to the breach of duty to indemnify claim.

### 2.  The Duty To Defend

Plaintiffs argue in their cross-motion for summary judgment that Defendant was obligated to provide a defense even if it had no obligation to indemnify.  As previously stated, under New York law, "the duty to defend is broader than the duty to indemnify."  Turner Consrt. Co. v. Kemper Ins. Co., 198 F. App'x 28, 32 (2d Cir. 2006) (quoting Frontier Insulation Contrs., Inc. v. Merchants Mut. Ins. Co., 91 N.Y.2d 169, 175, 667 N.Y.S.2d 982 (1997)).  The narrower duty to indemnify arises only if the claim for which the insured has been judged liable lies within the policy's coverage."  Allianz Ins. Co. v. Lerner, 416 F.3d 109 (2d Cir. 2005) (quoting Frontier Insulation Constrs., 91 N.Y.2d at 178).  Thus, "while the duty to defend is 'measured against the possibility of a recovery, the duty to pay is determined by the actual basis for the insured's liability to a third person.'"  Id. (quoting Frontier Insulation Constrs., 91 N.Y.2d at 178) (internal quotations omitted).  "[S]o long as the claims asserted against the insured may rationally be said to fall within policy coverage, *whatever may later prove to be the limits of the insurer's responsibility to pay*, there is no doubt that it is obligated to defend."  Hugo Boss Fashions, Inc. v. Federal Ins. Co., 252 F.3d 608, 620 (2d Cir. 2001) (quoting Seaboard Sur. Co. v. Gillette Co., 64 N.Y.2d 304, 310-11, 476 N.E.2d 272, 486 N.Y.S.2d 873 (1984)) (internal bracketing omitted) (emphasis in original).  As such, there is a "separate, contractual duty to defend . . . until it is determined *with certainty* that the policy does not provide coverage."  Hugo Boss Fashions, Inc., 252 F.3d 608 (quoting Seaboard Sur. Co., 64 N.Y.2d at 310-11

(emphasis in original).

 "The duty of an insurer to defend its insured arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim.'" Turner Consrt. Co., 198 F. App'x at 31-32 (quoting Frontier Insulation Contrs., Inc., 91 N.Y.2d at 175 (internal quotation marks omitted). "If a complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend." BP Air Conditioning Corp. v. One Beacon Ins. Group, 8 N.Y.3d 708, 714 (2007) (citation and internal bracketing omitted).  "In other words, 'the complaint controls the determination of [the insurer's] duty to defend,' even if discovery reveals evidence showing that the underlying incident resulted from actions not covered under the policy." Ma-Do Bars, Inc. v. Penn-America Ins. Co., No. 1:09–cv–901, 2010 WL 5138475, at *3 (N.D.N.Y. Dec. 9, 2010) (quoting Bovis Lend Lease LMB, Inc. v. Cont'l Cas. Ins. Co., No. 02 Civ. 7674, 2004 WL 691395, at *4 (S.D.N.Y. March 31, 2004) (citations omitted)).  "The merits of the complaint are irrelevant and, an insured's right to be accorded legal representation is a contractual right . . . and this right exists even if debatable theories are alleged in the pleading against the insured."  Town of Massena v. Healthcare Underwriters Mut. Ins. Co., 98 N.Y.2d 435, 444, 779 N.E.2d 167 (2002).  "The inquiry is whether the allegations fall within the risk of loss undertaken by the insured '[and, it is immaterial] that the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within its exclusory provisions.'"  BP Air Conditioning Corp., 8 N.Y.3d at 714 (quoting Town of Massena, 98 N.Y.2d at 444).

 Where, as here, "the policy includes an obligation to defend, if there is a

doubt as to whether the claim comes within the insurer's duty to indemnify, the insurer is generally required to furnish a defense, leaving the issue of indemnification to be settled after establishment of the insured's liability." Vill. of Sylvan Beach, 55 F.3d at 115. As such, the duty to defend "endures unless and until there is a point in the [underlying] proceeding at which the factual nature of [the] allegation[s] ... is clarified 'with certainty' to exclude any issue relating to [covered] conduct." Century 21, Inc. v. Diamond State Ins. Co., 442 F.3d 79, 84 (2d Cir. 2006) (citation omitted). An "insurer cannot avoid its duty to defend" until any uncertainties as to whether an insurance policy applies are resolved. Hugo Boss Fashions, Inc., 252 F.3d at 620. "A court applying New York law, then, should only excuse an insurer from its duty to defend if it can be concluded *as a matter of law* that there is no possible factual or legal basis on which the insurer might eventually be held to indemnify the insured." Johnstown v. Bankers Standard Ins. Co., 877 F.2d 1146, 1149 (2d Cir. 1989) (emphasis added; citations omitted).

Here, it is clear from the "four corners" of the complaint in the Stoel Malpractice Action that it gave rise to a duty to defend. The complaint recounts the history of the Firm's representation of Stoel in the Leprino Action, including allegations that the Firm permitted the case to be dismissed with Stoel's consent and that the Firm failed to notify Stoel of the dismissal. See Ex. I to Schmitz Aff., ¶¶ 13-20. The complaint also alleges that Plaintiffs acted negligently in their representation of Stoel; breached the fiduciary duties that they owed to Stoel; violated professional guidelines and state law; and otherwise failed to exercise professionalism, diligence, and competence in their representation of Stoel. Id. ¶¶ 21-76. Thus, the four corners of the underlying complaint gave rise to claims that

were potentially covered by the One Beacon Policy as the purpose of the policy was to "provide[] professional liability insurance for" the Firm.  Ex. B to Schmitz Aff. at 11.  As such, the legal uncertainty regarding the applicability of the Known Claims Exclusion gave rise to a duty to defend and Defendant breached that contractual duty when it withdrew coverage.  See Hugo Boss Fashions, Inc., 252 F.3d at 622 ("*legal* uncertainty as to insurance coverage gives rise to (an at least temporary) duty to defend") (emphasis in original).

Defendant argues that "[t]here is no applicable rule or case law authority – nor do Plaintiffs cite any – to support their position that One Beacon [was] obligated to defend the Stoel Malpractice Action until [the present] action is resolved," and that such a "ruling would render an insurer's disclaimer meaningless, and always would subject an insurer to payment of an insured's defense costs – *regardless of the clear applicability of policy exclusions* – until either the insurer commences a declaratory judgment action or the insured does so . . . and such action is resolved."  Def.'s Mem. of Law in Opp'n at 16 (emphasis added).  First, in this case, it was not "clear" that the Known Claims Exclusion applied as the applicability of the exclusion required determining whether a reasonable attorney could expect a claim to arise.  Moreover, the Court of Appeals for the Second Circuit has recognized that an "insurance company can readily protect itself, from having to defend for too long," by "seek[ing] a declaratory judgment with respect to the relevant policy exclusion . . . ."  Hugo Boss Fashions, Inc., 252 F.3d at 622.[11]  Such a practice would also be consistent with the

---

[11]  Such suits are common.  See, e.g., United Nat'l Ins. Co. v. Waterfront New York Realty Corp., 994 F.2d 105, 107 (2d Cir. 1993) ("[The insurer] agreed to defend [the insureds] . . . but did so under a reservation of rights.  [The insurer] then began the present actions against the insureds . . . seeking a declaration that it owed no duty of defense or indemnification."); Admiral

requirement under New York law that an insurer meet its burden of establishing the applicability of a policy exclusion.  See Seaboard Sur. Co., 64 N.Y.2d at 311 ("[B]efore an *insurance company* is permitted to avoid policy coverage, *it* must . . . establish[] that the exclusions or exemptions [claimed] apply in the particular case, and that they are subject to no other reasonable interpretation.") (emphasis added; citations omitted).  Thus, in disclaiming coverage before it was concluded as a matter of law that it had no duty to defend or indemnify Plaintiffs in the Stoel Malpractice Action, Defendant breached its duty to defend Plaintiffs.

Accordingly, Plaintiffs' cross-motion for summary judgment is granted and Defendant's motion for summary judgment is denied as to the breach of duty to defend claim.

### D. Damages

Plaintiffs also seek consequential damages for Defendant's breach of contract.  See Am. Compl. ¶¶ 52-53.  Having concluded that Defendant does not have a contractual duty to indemnify Plaintiffs in the Stoel Malpractice Action, the remaining issue to resolve is whether Plaintiffs are entitled to consequential damages as to the breach of contractual duty claim.

In New York, "[i]t is well settled that in breach of contract actions 'the

---

Ins. Co. v. Weitz & Luxenberg, P.C., No. 02 Civ. 2195, 2002 WL 31409450, at *1 (S.D.N.Y. Oct. 24, 2002) (The plaintiff-insurer "acknowledged [in a letter to defendants-insured] that on the basis of 'the four corners of the [underlying] pleading' [the insurer] had a duty to defend" the insured, but "also expressly 'reserv[ing[ the right to modify or withdraw . . . coverage."  Over a year later, the insurer "disclaimed its obligation to defend and indemnify [the insurer]," and, on the same day,  "filed [an] action seeking a declaratory judgment regarding its obligations" under the policy."); Am. Guar. & Liab. Ins. Co. v Moskowitz, 19 Misc. 3d 548, 856 N.Y.S.2d 820 (N.Y. County Sup. Ct. 2008) (same).  Such suits have also been brought where the applicability of known claims exclusions, like the one in this case, are at issue.  See, e.g., Liberty Ins. Underwriters, Inc., 78 A.D.3d 602; Quanta Lines Ins. Co. v. Investors Capital Corp., No. 06 Civ. 4624, 2009 WL 4884096, at *1 (S.D.N.Y. Dec. 17, 2009).

nonbreaching party may recover general damages which are the natural and probable consequence of the breach.'" Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of New York, 10 N.Y.3d 187, 192, 886 N.E.2d, 856 N.Y.S.2d 505 (2008) (citing Kenford Co. v County of Erie, 73 N.Y.2d 312, 537 N.E.2d 176, 540 N.Y.S.2d 1 (1989)).  Because, as a matter of law, Defendant breached its contractual duty to defend, Plaintiffs are entitled to general damages.

"Special, or consequential damages, which 'do not . . . directly flow from the breach,' are also recoverable in limited circumstances." Bi-Economy Mkt., Inc., 10 N.Y.3d at 192 (quoting Am. List Corp. v U.S. News & World Report, 75 N.Y.2d 38, 43, 549 N.E.2d 1161, 550 N.Y.S.2d 590 (1989)).  To impose contractual damages on the breaching party, "such unusual or extraordinary damages must have been brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting." Id. at 192 (quoting Kenford Co., 73 N.Y.2d at 319).  "[T]he party breaching the contract is liable for those risks foreseen or which should have been foreseen at the time the contract was made." Ashland Mgmt. v. Janien, 82 N.Y.2d 395, 403, 604 N.Y.S.2d 912, 624 N.E.2d 1007 (1993).  The breaching party need not "have foreseen the breach itself or the particular way the loss occurred, rather, [i]t is only necessary that loss from a breach was foreseeable and probable." Id. (internal quotation marks and citations omitted).

"To determine whether consequential damages were reasonably contemplated by the parties, courts must look to the nature, purpose and particular circumstances of the contract known by the parties . . . as well as what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract

was made." <u>Bi-Economy Mkt., Inc.</u>, 10 N.Y.3d at 193 (internal quotation marks and citations omitted).

 Among the damages that Plaintiffs claim to have suffered are the "incursion of defense costs, loss of peace of mind and related security, exposure to increased damages in the lawsuit, and other consequential damages."  Pls.' Mem. of Law in Support at 29.  "[A]n insured may recover litigation costs incurred *defending* a suit against a third party after the insurer declines the claim," and such costs are considered consequential damages as they are a foreseeable result of an insurer's breach of its contractual obligations.  <u>Versatile Housewares & Gardening Systems, Inc. v. Thill Logistics, Inc.</u>, — F. Supp. 2d —, —, 2011 WL 2566061, at *11 (S.D.N.Y. 2011) (emphasis in original) (<u>citing</u> <u>Doyle v. Allstate Ins. Co.</u>, 1 N.Y.2d 439, 444, 136 N.E.2d 484, 154 N.Y.S.2d 10 (1956) (using the synonymous "special damages").  Moreover, in entering into an insurance contract, "[a]n insured may . . . bargain for peace of mind, or comfort, knowing that it will be protected in the event of a catastrophe."  <u>Bi-Economy Mkt., Inc.</u>, 10 N.Y.3d at 194 (citations omitted).  Thus, it was foreseeable that Plaintiffs would suffer the loss of peace of mind as a result of Defendant's breach.

 As such, Plaintiffs are entitled to both general and consequential damages arising from Defendant's breach of its contractual duty to defend.

### *V.  Conclusion*

 In accordance with the foregoing, it is ORDERED that Defendant's motion for summary judgment, Dkt. No. 23, is GRANTED in part and DENIED in part; and it is further

 ORDERED that Plaintiffs' cross-motion for summary judgment, Dkt. No. 27, is GRANTED in part and DENIED in part; and it is further

ORDERED that Plaintiffs are entitled to both general and consequential damages arising from Defendant's breach of its contractual duty to defend, to be determined by a trier of fact; and it is further

ORDERED that the parties engage in meaningful settlement discussions as to the amount of said damages and provide a status report to the court regarding their settlement efforts within thirty days of the filing of this Memorandum-Decision and Order.

IT IS SO ORDERED.

DATED:      December 22, 2011
            Syracuse, New York

_____
Neal P. McCurn
Senior  U.S. District Judge

27